Good morning. My name is Michael J. Trem and I represent Mr. Fekrat on the case that was not submitted. Mr. Fekrat's appeal is a very straightforward issue with regard to whether or not there is any justification for the district courts using two different loss amounts when it sentenced the co-defendant versus when it sentenced Mr. Fekrat. What the record reflects is that the district court judge essentially gave the co-defendant who was equally situated, equally a participant, and equally culpable an additional break beyond whatever that co-defendant may have received as a result of his cooperation with the government. That additional break was using a loss amount that was lower than the loss amount that the district court judge applied to Mr. Fekrat. Or another way to look at it is he penalized Mr. Fekrat for going to trial because he used a greater loss amount. Do you agree that the standard of review is clear error? No, I do not, Your Honor, and I indicated that in the reply brief. There's no factual dispute here with regard to the loss amounts. Those were not disputed. They were contained in the government's exhibit that's part of the excerpt. There may not be a factual dispute about the overall loss amount, but isn't there a factual dispute about responsibility for it? In other words, the judge in Mr. Johnson's case found that he was only responsible for part of it. Isn't that a factual determination, I guess, is my question. And in this case, I submit that it's not a factual determination because the facts that make up the two respected numbers that we're talking about were not litigated in Mr. Johnson's sentencing and were not litigated in Mr. Fekrat's sentencing. And the district court judge in his rulings in both cases did not indicate that there was any factual dispute that he resolved one way or another with regard to which amount to use. Well, the judge just basically gave essentially a one-line ruling. I mean, I know it's in a transcript, but it's a one-line ruling. But the arguments that were presented to him before that, particularly from the prosecutor, essentially tried to explain the difference, at least what the prosecutor contended was the difference between Mr. Fekrat and Mr. Johnson. So why shouldn't we infer that the judge basically adopted that factual distinction? Follow what I'm saying? In other words, the prosecutor says that, you know, Mr. Fekrat actually put through all the charges himself. Mr. Johnson wasn't there for all of them. He testified that he didn't have any idea how many charges were being made. And that was the prosecutor's argument for a distinction between the two. Why shouldn't we assume that the district judge made that same factual distinction, in other words, the factual determination in making the ruling? I would submit for a couple of reasons. One of the reasons is because there's no, obviously, discussion from the district court judge to indicate that he considered that argument and used it to differentiate in this particular case. Number two, had that been the case. But it was, I mean, it was basic to the whole factual layout of the case at trial and otherwise that Fekrat was doing most, had taken off the machine and was in his apartment and doing things, doing the inputting by himself of the bulk of it. But the evidence in the case demonstrates that that whole process was done in conjunction with the co-defendant. In conjunction with him, but not physically with him and not with him being there to know what was actually being done on the ground and with regard to how many of these submissions were being made. Well, he wasn't always on the ground. He wasn't there, I thought, at all for several days. He wasn't there all of the time for all the submissions. But he was telephonically in communication during the submission process, throughout all of the submission process. Number one, it was his machine. Number two, and if you look at the Exhibit 1 and you look at the dates and the timing of the respective charges that we're talking about, they're commingled. By commingled, I mean that the co-defendant is being, the numbers for the co-defendant are coming out of exactly the same days as the numbers that are being attributed to Mr. Fekrat. The difference is not when the charges were made. And that's clear in the exhibits. And it's clear in the records. I gather the differences are whether there were approved charges, and I gather First of all, does all this matter? I mean, does, is the question whether there's a difference between the two of them or whether his number is substantiated? The issue is whether or not there is an appropriate reason for the distinction between the two of them. Well, why is that the issue? That's what I'm asking you. I mean, if the policy made a mistake with Johnson, why is that the issue? Well, if that were the case, if the district court judge had said at the time of Mr. Fekrat's sentencing, I made a mistake with regard to my acceptance of the numbers with Mr. Johnson, and here's my analysis as to why the $1.2 million is an appropriate number, you might go along with that, assuming that the underlying explanation is reviewable and makes any sense. The district court judge didn't do that. He simply picked one defendant and gave him a break. So are you, is this a disparity argument? I mean, is this an argument that the facts don't substantiate the decision, or is it a disparity argument? It's not a disparity argument. Well, then we should just be looking at whether the facts in this case substantiate the decision in this case and not worry about Johnson. It's a case in which he gave the other defendant a break. How does that give you a right to release? Well, the other way to turn that coin, Your Honor, is that he penalized Mr. Fekrat for going to trial as opposed to giving the other defendant a break. And the ---- We had this problem at the beginning of this whole unfortunate guidelines issue where they give people credit for not going to trial, and you get a lower sentence for not going to trial, which is questionable, let's say. And the argument that was made was, well, you're penalizing people who go to trial. And the Supreme Court said, oh, no, you're not penalizing them. You're benefiting the people who don't go to trial. Now, that's a, you know, that kind of analysis is whatever you want to make of it. But it's similar to what you're saying here, that the other defendant got a break for whatever reason, and your client didn't get the break. You could call that didn't get the break, or you can say he was penalized. The difference in the two circumstances are that in the one case, the person who gets a lower sentence under a guideline calculation because they accept responsibility and don't go to trial, that's a definable conduct that differentiates the two individuals. There is no definable conduct that differentiates the two individuals in this case on this issue. So what's your basis for saying that the co-defendant Johnson got a break on the loss amount because he cooperated and testified and so on? I mean, is there something in the record of his sentencing that supports that? It's in the plea agreement. And the government ---- Well, I mean, they agreed on a loss amount, but is there something that suggests that the reason that he got a lower loss amount than your client was the fact that he cooperated? I mean, at Johnson's sentencing, the prosecutor essentially previewed this issue. The judge said, well, do they both have the same loss amount? The prosecutor said, no, we may ask for a larger loss amount on Mr. Fekrat, and here's why, and explained essentially the same thing that he did at Mr. Fekrat's sentencing later. The number that's used is the number that comes out of the plea agreement. Right. And that was a discussion at the sentencing with Mr. Johnson. And that's a cooperation plea agreement. So I submit it's fair to assume that there is a connection between the cooperation plea agreement and the number that was used, and it turns out that that number is objectively verifiable as a loss amount. And the question then becomes, what is the difference between these two individuals? Why isn't the question whether or not there is a substantiation in the record for the loss amount attributed to your client, and is there? Tell me what's wrong with the number. Suppose Mr. Johnson didn't exist. What's wrong with the number? I think you could make an argument for both numbers since they're both the theoretical losses. Why isn't that the end of the story? I'm still really having a hard time with that. As long as this is substantiated on the record, and in fact is a loss, a permissible loss amount, what does Mr. Johnson have to do with it? What Mr. Johnson has to do with it is the fact that under the cases we've cited, you, the Court should not permit one defendant under the same set of facts to get a different guideline analysis than another defendant on exactly the same set of facts. Well, I view disparity if I was arguing to you that the overall sentences were disparate. That's not the argument I'm making. What I'm saying is that the guideline basis for the two sentences, specifically the loss number, is different in the two equally situated co-defendants with no explanation for why they are different. And it is that concept that I submit is incorrect. Thank you. Thank you. Good morning. May it please the Court. Justin Rhodes on behalf of the United States of America. I think there are two questions in this appeal. The first is whether the district court correctly found the $1.2 million intended loss amount. And then secondly, the issue that Mr. Treeman has raised, which is whether that number is correct in light of the sentencing of Defendant Johnson. And I think I'll go to the second issue first because that seems to be the crux of what's been discussed today. The fact is, is that what Defendant Johnson did, what his conduct was, was very different than what Defendant Fekirath did as part of this scheme. Although Johnson was present for some of the transactions the first two days, he wasn't present for the next four days. Mr. Fekirath took the machine, the credit card terminal, back to his house and entered the numbers by himself. There is evidence from the record that Johnson had no idea how much was being charged, that even when he went to visit Fekirath, Mr. Fekirath was not inputting the charges at the time, that Johnson was told only how much to write in checks to Mr. Fekirath. He only wrote $90,000 worth of checks, which you can infer he had no idea that we were talking about a seven-figure loss amount. There's evidence that Fekirath, not Johnson, called American Express to find out how much had been approved. Johnson testified that the only time he found out of this seven-figure loss amount was a year later when he was interviewed by the Secret Service. Kagan. I mean, first of all, do you agree that you seem to agree that there is some relevance to what Mr. Johnson got? So what is that relevance exactly? I think the only relevance is that it was perfectly appropriate and the district court did not clearly err, which I believe is a standard, in finding a $160,000 loss amount for Johnson, and certainly did not clearly err in finding the full intended loss amount for Defendant Fekirath, who personally input all the numbers. And the district court, I think, summarized it. So if we disagreed with you, if we thought that there was no reason to distinguish the two, then Mr. Fekirath would win and get $160,000? No. I don't think that's the case. I'm merely addressing Mr. Truman's arguments. The intended loss should be what Mr. Fekirath intended, and that's the greater of actual versus intended in all of the Ninth Circuit cases. And I think Blitz and Tuener and Cantrell talk about what it was, what was the largest amount that the person personally intended to happen, even if there were intervening factors that would have prevented that from happening. Okay. So if the two defendants, though, were indistinguishable in terms of the intended loss, and I recognize that's not your position, but if they were indistinguishable and Mr. Johnson gets loss amount A, is Mr. Fekirath entitled to get the same loss amount? And if not, why not? I don't think so, because even under similar facts, are you saying that they are? In other words, let's just hypothetically, they're materially indistinguishable in terms of their responsibility for the loss. And let's say Defendant 1, in this case Johnson, gets a windfall. Does that entitle Defendant 2 to a windfall, to the same windfall? I don't necessarily think so. I think that might change the standard of review, because if the district court came to the same factual findings as to each, then that would then put it in your court for a de novo review as to the application of the guidelines to those facts. What would – what was – if that is something I'm worried about, where did the $160,000 come to from Johnson? It seems to me that if that – the differentiation was, in fact, based on one was inputting it and the other one was in a remote place and didn't necessarily know the details, then why would he be responsible for the $160,000 as opposed to the amount that was inputted when he actually knew about it? Your Honor, at the sentencing for Defendant Johnson, the argument that the government made was that he could have called American Express and said, how much have you approved through my merchant terminal, and would have been told approximately $161,000. Similarly, he wrote $90,000 worth of checks, which although is a slightly lower guideline level, puts him in the ballpark of, you know, $900,000 to $200,000 – $90,000 to $200,000 worth of loss, which is very different than a transaction that was just automatically denied because the credit card is no longer valid. He wouldn't necessarily – there's no evidence in the record that he would have known about those transactions. And I think the district court captured it well when Johnson's sentencing said, and I quote, there's no proof that he had any inkling that it would amount to 167 unauthorized charges. And that's at the further excerpts of record, page 31. And I think that's the district court's factual finding as to Johnson, that there's a difference, that he had no idea that all of these charges had gone through, whereas when it came to Mr. Fekrat, all the evidence was in the record was that Mr. Fekrat knew exactly how many charges had been put in because he was responsible for typing those charges in. And he was using credit card receipts that he had collected from his business and from others. And so he, as the architect of the scheme, knew exactly what the intended loss was. And for that reason, he is held to the intended loss amount as the case law from this circuit holds, which is the numbers that he sought to get from American Express. If there are no further questions, I'll submit. Thank you, Captain. Case just argued will be submitted.
judges: Kennelly, Reinhardt, Berzon